### UNITED STATES DISTRICT COURT -- SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member cases
    *Burlingame, et al. v. Bin Laden, et al.*, 02-cv-7230 (GBD)(SN) and *Schneider v. al Qaeda
    Islamic Army, et al.*, 02-cv-7209 (GBD)(SN))

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
MOTION FOR ENTRY OF FINAL JUDGMENTS AGAINST IRAN
ON BEHALF OF CERTAIN *BURLINGAME* AND *SCHNEIDER* PLAINTIFFS
<u>BASED ON PAST AWARDS [OR WAIVERS] OF PUNITIVE DAMAGE CLAIMS</u>**

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 1

I.     THE LIABILITY OF IRAN UNDER THE FSIA ............................................................ 1

   A.     Background on the FSIA .......................................................................................... 2

   B.     Section 1606 of the FSIA ........................................................................................ 2

   C.     The § 1605A(c) Terrorist Exception Cause of Action ............................................ 5

   D.     Present State of the § 1605A FSIA Cause of Action .............................................. 7

   E.     Applicability of State Law to 9/11 FSIA Wrongful Death Claims .......................... 8

II.    WHAT STEPS MUST A DISTRICT COURT TAKE TO ENTER AN FSIA
     DEFAULT JUDGMENT? ............................................................................................ 11

III.   THE FSIA WAS MISAPPLIED AGAINST IRAN IN THIS LITIGATION ................ 14

   A.     This Court Has Wrongfully Ignored § 1606 and Applicable State Law & Ruled
      That § 1605A Provides a Stand-Alone Wrongful Death Cause of Action ................ 14

   B.     Section 1605A Does Not Preempt State Wrongful Death Law ................................ 18

   C.     Section 1605A Does Not Require a Uniform Wrongful Death Remedy ................... 19

IV.   A WAIVER OF PUNITIVE DAMAGE AWARDS NOW ENTITLES THE
     WITHIN PLAINTIFFS TO FINAL JUDGMENTS AGAINST IRAN .......................... 24

V.    PLAINTIFFS REQUEST THAT THIS COURT CERTIFY ITS ORDER &
     JUDGMENT AS FINAL AGAINST IRAN UNDER FED. R. CIV. P.  54(b) .......... 25

CONCLUSION ..................................................................................................................... 26

# Table of Authorities

## Cases

*Adams v. Woods*, 6 U.S. (2 Cranch) 336 (1804) .......................................................................... 23

*B.F. Goodrich v. Betkoski*, 112 F.3d 88 (2d Cir. 1997) ................................................................ 22

*Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003) ........................................... 4, 22

*Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150 (D.D.C. 2011) ...................................... 6

*Boim v. Quranic Literacy Inst. & Holy Land Found.* 291 F.3d 1000 (7th Cir. 2002) ................ 17

*Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988) ..................................................................... 21

*Burks v. Lasker*, 441 U.S. 471 (1979) .......................................................................................... 4

*Burnett v. New York Cent. R.R.*, 380 U.S. 424 (1965) ................................................................ 23

*Cassierer v. Thyssen-Bornemisza Collection Foundation*, 596 U.S. 107 (2022) .......................... 4

*Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76 (2d Cir. 2005) .................. 12

*City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) ..................................................................... 22

*Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238 (2d Cir. 1994) ......................... 12, 24

*Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Fed'n*, 361 F.3d 676
   (2d Cir. 2004) ............................................................................................................................ 13

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) .................................................... 19

*Doe v. Bin Laden*, 663 F.3d 64 (2d Cir. 2011) .............................................................................. 7

*Dorking Genetics v. United States*, 76 F.3d 1261 (2d Cir. 1996) ................................................ 10

*Est. of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107  (D.D.C. 2018) ................ 7, 16

*Federal Republic of Germany v. Philipp*, 592 U.S. 169 (2021) .................................................. 18

*First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda–Permanent Mission*, 877 F.2d 189
   (2d Cir. 1989) ............................................................................................................................ 11

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983).......... 3

*Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348 (D.C. Cir. 2018)............................................ 4

*In re Air Crash Disaster at Belle Harbor*, 490 F.3d 99 (2d Cir. 2007) ..................................... 3, 9

*In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. 1445 (D. Colo. 1988) ............. 20

*In re Aircrash Disaster Near Roselawn, Indiana on Oct. 31, 1994,*, 948 F. Supp. 747
   (E.D.N.Y 1996) ........................................................................................................................ 20

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118 (2d Cir. 2013)...................................... 13

*Jones v. Bock*, 549 U.S. 199 (2007) ............................................................................................ 12

*Kaplan v. Central Bank of the Islamic Republic of Iran*, 961 F. Supp. 2d 185 (D.D.C. 2013).... 17

*Lauer v. City of New York*, 240 A.D.2d 543, 659 N.Y.S.2d 57 (1st Dep't 1997)........................ 16

*Liff v Schildkrout*, 49 N.Y.2d 622 (1980) .................................................................................... 8

*Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019)................................... 13, 23

*McDougald v. Garber*, 73 N.Y.2d 246 (1989) ............................................................................. 8

*Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618 (1978) .............................................................. 3

*O'Melveny & Myers v. Fed. Deposit Ins. Co.*, 512 U.S. 79 (1994) ............................................. 21

*Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017) ........................................................ 6

*Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1 (2d Cir. 1996)................................... 4, 7, 20

*Schwarder v. United States*, 974 F.2d 1118 (9th Cir. 1992).......................................................... 10

*Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46 (D.D.C. 2018) ............................................. 13, 23

*Soriano v. United States*, 352 U.S. 270 (1957).......................................................................... 12

*Stanley v. City of New York*, 2020 N.Y. Misc. LEXIS 20353 (Sup. Ct. N.Y. Cty. 2020) ........... 16

*The Harrisburg*, 119 U.S. 199 (1886) .......................................................................................... 3

*Travelers Ins. Co. v. Carpenter*, 411 F.3d 323 (2d Cir. 2005) .............................................. 15, 16

*United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979)................................................... 18, 21

*United States v. Kubrick*, 444 U.S. 111 (1979) ............................................................. 12

*United States v. Western Pac. R.R.*, 352 U.S. 59 (1956) ............................................... 23

*Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010) ......................... 6

*Wamai v. Republic of Sudan,* 60 F. Supp. 3d 84 (D.D.C. 2014) ..................................... 6

*Weinstein v. Islamic Republic of Iran*, 831 F.3d 470 (D.C. Cir. 2016) ........................ 12

*Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597 (1991) ........................................ 19

*Wolkstein v. Morgenstern*, 275 A.D.2d 635, 713 N.Y.S.2d 171 (1st Dep't 2000) ...................... 16

*Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123 (2d Cir. 1999) ........ 21

**Statutes**

28 U.S.C § 2674 ............................................................................................................ 10

28 U.S.C. § 1330 ...................................................................................................... 1, 11

28 U.S.C. § 1602 ...................................................................................................... 1, 11

28 U.S.C. § 1605 ................................................................................................... 2, 3, 6

28 U.S.C. § 1605(a)(2) ................................................................................................... 3

28 U.S.C. § 1605(a)(5) ................................................................................................... 3

28 U.S.C. § 1605(a)(7) ................................................................................................ 5, 7

28 U.S.C. § 1605A ................................................................................................. passim

28 U.S.C. § 1605A(a) ..................................................................................................... 5

28 U.S.C. § 1605A(b) ............................................................................................... 12, 23

28 U.S.C. § 1605A(c) ............................................................................................. 5, 7, 10

28 U.S.C. § 1606 ................................................................................................... passim

28 U.S.C. § 1607 ....................................................................................................... 2, 6

28 U.S.C. § 1608(e) ............................................................................................... passim

28 U.S.C. § 1611 ............................................................................................................. 1, 11

Anti-Terrorism Act (ATA), 18 U.S.C. § 2333 ........................................................... 17

Conn. Gen. Stat. § 45a-448(b) ................................................................................... 8

Conn. Gen. Stat. § 52-555 ......................................................................................... 8

Conn. Gen. Stat. §§ 45a-437 ..................................................................................... 8

Lord Campbell's Act (1846) ...................................................................................... 3

N.J. Stat. Ann. § 2A .................................................................................................. 8

N.J. Stat. Ann. § 3B .................................................................................................. 8

N.Y. Estate Powers & Trusts Law § 5-4.4 ................................................................ 8

**Rules**

Fed. R. Civ. P.  54(b) ............................................................................................... 24, 25

Fed. R. Civ. P. 55(e) ................................................................................................. 12

**Legislative Materials**

122 Cong. Rec. 17462 (June 10, 1976) ....................................................................... 2

122 Cong. Rec. 17468 (June 10, 1976) ....................................................................... 10

137 Cong. Rec. S4511-04 (daily ed. Apr. 16, 1991) ................................................. 17

H.R. Rep. No. 103-702 (1994) .................................................................................... 7

H.R. Rep. No. 104-383 (1996) .................................................................................... 7

H.R. Rep. No. 110-477 (2008) .................................................................................... 5

H.R. Rep. No. 94-1487 (1976) .............................................................................. 2, 3, 10

## PRELIMINARY STATEMENT

This Memorandum of Points & Authorities is respectfully submitted on behalf of certain Plaintiffs described within the accompanying Declaration of John F. Schutty, Esq. ("Schutty Decl."). The Estates of these wrongful death Plaintiffs each have been previously awarded $6.88 million in punitive damages against the Defendant Islamic Republic of Iran ("Iran"). *Id*. at 3. If these awards are not honored in an immediate Final Judgment, these Plaintiffs will conditionally agree to waive this only remaining claim against Iran to obtain finality against Iran so that they might appeal erroneous rulings of this Court more fully described below. *Id*. at 4.

The goal of these moving Plaintiffs is to obtain Final Judgments against Iran as soon as possible. Since the within Plaintiffs have received complete compensatory and punitive damage awards against Iran, they are entitled to Final Judgments immediately. Should the Court wish to revisit and require additional hearings or briefings on their punitive damage claims, the Plaintiffs herein agree to waive their punitive damage claims in exchange for this Court's issuance of an immediate Order to the Clerk of the Court to issue compensatory damage Final Judgments with an award of prejudgment interest. If the prior decisions of this Court regarding Iran's FSIA liability are not reviewed and vacated by this Court, and/or the within Plaintiffs are not granted leave to appeal, these Plaintiffs will otherwise continue to be injured by money being improperly issued to non-heirs under state law and those bringing untimely claims – all after more than twenty-three years of litigation. There is simply no reason for further delay in issuing the requested Final Judgments.

## I.     THE LIABILITY OF IRAN UNDER THE FSIA

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611, provides the exclusive basis for obtaining jurisdiction over a foreign sovereign (*e.g.*, Iran) in United States

courts.  When a plaintiff seeks a default judgment against a foreign state under the terrorism exception codified at 28 U.S.C. § 1605A, the district court must conduct an independent and searching inquiry before entering judgment.  In the Second Circuit, default judgments against foreign states are subject to heightened scrutiny, reflecting both separation-of-powers concerns and principles of international comity.

### A.    Background on the FSIA

The FSIA was enacted in 1976.  The statute granted foreign states immunity from suit in the United States and withdrew that immunity for certain designated classes of cases.  The legislative history of the FSIA statute reveals that it was enacted to create "comprehensive rules" regarding the immunity of foreign states from suit and discontinue "the practice of judicial deference to suggestions of immunity from the executive branch."  H.R. Rep. No. 94-1487 at 11 (1976).  The legislative history of the statute explicitly shows that it was "not intended to affect the substantive law of liability" or "the attribution of responsibility between or among entities of a foreign state; for example, whether the proper entity of a foreign state has been sued; or whether an entity sued is liable in whole or in part for the claimed wrong."  *Id*.  As one sponsor of the statute described it, "this bill deals only with jurisdiction; the substantive law of liability would remain unchanged." 122 Cong. Rec. 17462 (June 10, 1976).

### B.    Section 1606 of the FSIA

Consistent with these principles, the FSIA contains a provision directing courts to existing traditional tort (state) law in determining the liability of a foreign state – once an exception to immunity is proven.  Section 1606 of the statute provides, as follows (emphasis added):

> **As to any claim for relief** with respect to which a foreign state is not entitled to immunity **under section 1605** or 1607 of this chapter, **the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances . . . .**

Thus, the FSIA merely lifts the sovereign immunity of a state. Section 1606 says nothing about the law that ultimately will be applied against the foreign state. For the answer to that question, a court is required to turn first – as it does in § 1605(a)(2) and § 1605(a)(5) cases, as well as all other cases under § 1605 – to § 1606, which instructs that "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. The legislative history of § 1606 shows that this provision was intended to "make clear" what should have been true in any event: "if the foreign state, political subdivision, agency or instrumentality is not entitled to immunity from jurisdiction, liability exists as it would for a private party under like circumstances." H.R. Rep. No. 94-1487 at 22 (1976).

Consistent with its plain text, § 1606 has been read as a "portal" or "pass-through" to the causes of action (and traditional tort law) that would exist against a private individual in like circumstances. That is, when § 1605 lifts the sovereign immunity of a foreign state, § 1606 allows a plaintiff to bring any claim against the foreign defendant that the plaintiff could have brought in like circumstances were the defendant a private individual. Example: if the FSIA claim involves a death or solatium claim, a court must determine what already existing state law[1] controls the claim. The language of § 1606 is most logically read as manifesting Congress's intent that state law should be the source for deciding which individuals qualify to pursue and recover death or solatium damages in FSIA cases. As the U.S. Supreme Court held in *First Nat'l City Bank v.*

---

[1]      The U.S. Supreme Court, in *The Harrisburg*, 119 U.S. 199 (1886), held: "At common law no civil action lies for an injury which results in death." *Harrisburg* firmly established that wrongful-death remedies exist only by statute, not by common law. After *The Harrisburg*, states enacted wrongful-death statutes, beginning with statutes modeled on Lord Campbell's Act (1846). In *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 622–23 (1978), the Supreme Court emphasized: "Wrongful death actions are creatures of statute," and explained that where Congress has not acted, state wrongful-death law governs. The Second Circuit acknowledged this fact in *In re Air Crash Disaster at Belle Harbor*, 490 F.3d 99, 107 (2d Cir. 2007): "Wrongful death actions are traditionally governed by state law."

*Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983): "Where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances."  The Supreme Court more recently repeated that rule: "Section 1606 directs a 'pass-through' to the substantive law that would govern a similar suit between private individuals."  *Cassierer v. Thyssen-Bornemisza Collection Foundation*, 596 U.S. 107, 117, (2022).  And the Second Circuit issued a similar ruling in *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir. 1996): "[T]he FSIA . . . operates as a 'pass-through' to state law principles."[2]  Because § 1606 demands that foreign states be treated identically to private defendants, courts uniformly apply the same state law that would govern a privately initiated tort action.[3] This structure ensures uniformity, predictability, and consistency in FSIA jurisprudence and acts as a barrier to the judiciary crafting law where no new law is needed.

---

[2]    *See also Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 332 (D.C. Cir. 2003):

> Of course, because these claims are based on a federal statute, their 'extent and nature' are 'federal questions.' *Burks v. Lasker*, 441 U.S. 471, 476 (1979).  But that does not, in this case, 'authorize the federal courts to fashion a complete body of federal law.'" *Id*. at 477. Rather, as we note in section II.B., infra, because the FSIA instructs that 'the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 1606, it in effect instructs federal judges to find the relevant law, not to make it.

Later in the *Bettis* opinion, the court revisited these themes, quoting § 1606 and emphasizing that "we have no free-wheeling commission to construct common law as we see fit," because the statute "instructs us to find the law, not to make it."  *Id.* at 337. These passages from *Bettis* send a strong signal that § 1606 of the FSIA is incompatible with the creation of a federal common law of tort.  *Accord Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348 (D.C. Cir. 2018).

[3]    Once jurisdiction is established under an FSIA exception, courts apply the substantive law that would govern a similarly situated private defendant. This requires the court to apply ordinary choice-of-law principles—typically those of the forum state.  *See Cassierer, supra,* 596 U.S. at 117 ("A foreign state or instrumentality in an FSIA suit is liable just as a private party would be.  That means the standard choice-of-law rule must apply.") (citation omitted).

### C.        The § 1605A(c) Terrorist Exception Cause of Action

In 2008, Congress repealed § 1605(a)(7) (that portion of the FSIA that removes immunity from foreign states engaged in terrorist activity) and enacted 28 U.S.C. § 1605A.  28 U.S.C. § 1605A(a), (c) provides that a "foreign state" is "liable" when:

1. "the foreign state was designated as a state sponsor of terrorism"

2. at the time of a "personal injury or death"

3. "that was caused by an . . . extrajudicial killing . . . or the provision of material support or resources for such an act,"

4. and the claimant is "a national of the United States." *Id*.

Section 1605A(c) now expressly creates a federal cause of action (removing immunity) directly against foreign states for acts of terrorism, including wrongful death.  While § 1605A(c) now makes foreign states liable for:

- personal injury or death,
- economic damages,
- solatium,
- pain and suffering and
- punitive damages,

it does not provide certain particulars needed to process claims arising out of traditional personal injury or death situations (*e.g.*, who has the standing to pursue and who may claim such damages).  Traditional (state) tort law applies to such issues under § 1606.  Significantly, neither § 1605A nor its legislative history indicates that it was intended to preempt existing state law.

Congress enacted § 1605A to provide victims and their families with a federal cause of action *and meaningful additional remedies*, including solatium and punitive damages.  *See* H.R. Rep. No. 110-477 at 1001 (2008).  Despite this FSIA development, § 1606 remains unequivocal: "*As to any claim* for relief with respect to which a foreign state is not entitled to immunity *under*

- 5 -

*section 1605* or 1607 of this chapter, *the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances*." 28 U.S.C. § 1606 (emphasis added). Congress chose to place the state-sponsored terrorism exception in § 1605 of the FSIA. By its terms, § 1606 applies to all § 1605 cases without distinction. For many years now, courts have read § 1606 as a pass-through to existing causes of action. There is nothing in the text of §1605 or § 1606 that suggests a different rule should be fashioned for cases brought pursuant to § 1605A.[4] These claims can include, in appropriate cases, state common and statutory law, federal statutory law, and even the law of a foreign state. Whether any of these sources of law will supplement the federal cause of action in a particular case will depend on several factors, including the governing choice of law analysis and at least in the context of federal statutory claims, a careful inquiry into congressional intent. The crucial point, however, is that there is nothing in § 1605A that displaces the prevailing rule that traditional tort (state) wrongful death law and other state law should be applied to the § 1605A cause of action through § 1606 against foreign states.

In sum, while § 1605A does create a new federal cause of action against foreign states who engage in terrorism, and while the new cause of action advises courts that punitive damages and

---

[4]    *See Owens v. Republic of Sudan,* 864 F.3d 751 (D.C. Cir. 2017), where the D.C. Circuit summarized the pass-through doctrine, explaining that under the pre-2008 scheme "a plaintiff suing a foreign sovereign for acts of state-sponsored terrorism had to rely on state substantive law." *Id*. at 809. The court reaffirmed that § 1606 supplied the rule of decision for liability and damages once immunity was waived. *See also Wamai v. Republic of Sudan,* 60 F. Supp. 3d 84 (D.D.C. 2014), where the court reiterated that under the pre-2008 terrorism exception, plaintiffs relied on state substantive law pursuant to § 1606. The court entered a default judgment and awarded wrongful death and related damages based on well-established FSIA terrorism damages frameworks derived from state tort law. *Id*. at 89–94. *Bland v. Islamic Republic of Iran,* 831 F. Supp. 2d 150 (D.D.C. 2011), where the court explained that FSIA § 1606 historically required application of state tort law once immunity was waived, and it evaluated damages for wrongful death, solatium, and emotional distress consistent with prior state-law-based FSIA cases. *Id*. at 154–58. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010), where the court held that while Iran was liable under the § 1605A federal cause of action, the court relied on earlier FSIA jurisprudence to assess wrongful death-type damages and solatium awards, noting the longstanding use of state tort principles in FSIA terrorism litigation. *Id*. at 73–78.

solatium damages may now be awarded (even if not allowed under state law), § 1605A otherwise must still be read along with § 1606 of the FSIA to ensure that the new cause of action operates as "a 'pass-through' to state law principles." *Pescatore,* 97 F.3d at 12.[5]  In its original and amended forms, the FSIA provides no guidance as to which family members can recover wrongful death and/or solatium damages (only that wrongful death damages may be pursued by a "legal representative"[6]): who can bring a claim based on a decedent's death, or what damages are recoverable other than what is described in § 1605A – these items were and are left to traditional state tort law deemed to be applicable after a choice of law analysis (and *not* to the discretion of a district court judge).  *See, e.g.*, *Est. of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 137 (D.D.C. 2018) (§ 1605A(c) "does not provide guidance on the substantive bases for liability to determine Plaintiffs' entitlement to damages").  If Congress wanted to increase the number of family members who might claim wrongful death and solatium damages against foreign states beyond what the states allow, Congress would have said so in the FSIA.  Congress did not.

### D.    Present State of the § 1605A FSIA Cause of Action

In 2018, the Federal Judicial Center published a "Guide" for federal judges entitled "The Foreign Sovereign Immunities Act"; this Guide advises the law that is to be applied when a § 1605A FSIA cause of action is asserted (emphasis added):

---

[5]    More recently, in *Doe v. Bin Laden*, 663 F.3d 64, 69–70 (2d Cir. 2011), the Second Circuit reiterated that FSIA terrorism claims are governed by ordinary tort principles once jurisdiction exists, emphasizing that Congress intended courts to apply familiar liability standards rather than create special sovereign defenses.

[6]    The legislative history of the FSIA supports this interpretation.  An early version of § 1605(a)(7) first used the term "claimant," and the House Report explained: "[W]here the victim is not alive to bring suit, *the victim's legal representative or another person who is a proper claimant in an action for wrongful death may bring suit.*"  H.R. Rep. No. 103-702 at 5 (1994) (emphasis added); *see also* Comprehensive Antiterrorism Act of 1995: Report of the Committee on the Judiciary, H.R. Rep. No. 104-383 at 62 (1996) ("It is expected that a lawsuit proceeding under [§ 1605(a)(7)] will be brought either by the victim, or on behalf of the victim's estate in the case of death or mental incapacity.").

**Applicable Law**

> An action against a foreign sovereign arises under federal law for purposes of Article III jurisdiction.  **Jurisdiction and procedure are governed by the FSIA.  However, for most purposes, the statute itself does not supply the substantive law but instead provides, in 28 U.S.C. § 1606, that where no immunity exists, foreign states "shall be liable in the same manner and to the same extent as a private individual under like circumstances."**
>
> **Thus, state substantive law is controlling on most issues of liability in FSIA cases.**

"The Foreign Sovereign Immunities Act, A Guide for Judges," Federal Judicial Center (2d ed. 2018) at 23.

### E.  Applicability of State Law to 9/11 FSIA Wrongful Death Claims

The state laws typically applicable in the 9/11 litigation (mostly involving NY, NJ and CT decedents) all expressly prohibit wrongful death awards (and/or solatium awards) to any family members other than a surviving spouse and children when a decedent is survived by a spouse and children (*i.e.*, no awards to parents and siblings of a decedent under such circumstances).[7]  "[T]he wrongful death statute [in New York] is the sole vehicle by which damages may be recovered for injuries resulting in death [of a New York decedent]."  *Liff v Schildkrout*, 49 N.Y.2d 622, 632 (1980); *see also McDougald v. Garber*, 73 N.Y.2d 246, 255 (1989) (emotional loss associated with

---

[7]    In New York, for example, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.*, dependent family members explicitly described within a statute, in proportion to their financial loss.  *See, e.g.,* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.  Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury of the parents and siblings.  *Id.*  Also, New York State law gives the court-appointed personal representative of an estate the *exclusive* authority to bring an action for a wrongful death on behalf of a decedent's estate.  *Id.*, § 5-4.1.  In New Jersey and Connecticut, similar rules exist to limit wrongful death damages to prescribed "heirs" (to protect widows and children) and such actions must be brought by an appointed personal representative.  *See* N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2; Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq*., and § 52-555.  Thus, awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate" (*e.g.*, parents and siblings, where the decedent is survived by a wife and children), and allowing individual family members to pursue wrongful death claims, personally, *expressly violates applicable state law and state policy.*

death is not compensable absent statutory authority). Hence, any individual not qualified as an heir under New York law is not permitted to pursue any other traditional tort remedy for the death of a New York decedent, *e.g.*, intentional infliction of emotional distress. On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed by this Court, especially if an award of damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy (protection of widows and children). The Second Circuit has emphasized that wrongful death actions are traditionally matters of state law. *See In re Air Crash Disaster at Belle Harbor*, 490 F.3d 99, 107 (2d Cir. 2007). Here the PEC has urged the Court to give no regard to the interests of the states where the 9/11 decedents were domiciled – but states have been left responsible for the future welfare and support of surviving widows and children through the creation of wrongful death and estate distribution statutes. States are undeniably responsible for administering the estates of decedents in this country and these states therefore have a far greater interest in the administration of the decedents' estates than the federal courts.

State law even applies in lawsuits filed against the United States. The Federal Tort Claims Act ("FTCA") removes the sovereign immunity of the United States for certain suits sounding in tort. 28 U.S.C. §§ 1346, 2671 *et seq*. The statute contains a liability provision that, in relevant part, tracks § 1606 of the FSIA almost word for word:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.
>
> If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such

death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

28 U.S.C § 2674. Section 2674 of the FTCA -- enacted in 1946 -- served as the model for §1606 of the FSIA. *See* 122 Cong. Rec. 17468 (June 10, 1976).[8]

As is true of § 1606 of the FSIA, courts have consistently read § 2674 of the FTCA to foreclose the creation of new causes of action or the reshaping of existing causes of action in claims against the United States. *See Dorking Genetics v. United States*, 76 F.3d 1261, 1265 (2d Cir. 1996) (holding that section 2674 means that the FTCA "does not create new causes of action"); *Schwarder v. United States*, 974 F.2d 1118, 1124 (9th Cir. 1992) ("[S]ection 2674 of the FTCA . . . provides that, at a minimum, the government not be exposed to any greater liability than a private individual."). An examination of the plain text, the structure and the legislative history of §§1605A(c) and 1606, and a comparison to the analogous statutory scheme of the FTCA, all confirm the approach courts have followed for many years in claims brought pursuant to the other exceptions in § 1605. When Congress removed the sovereign immunity of state sponsors of terrorism and provided a cause of action against immunity in § 1605A(c), just as when it removed the sovereign immunity of a foreign state for other categories of cases elsewhere in § 1605, the traditional tort law that might be employed against the foreign state through § 1606 include any claims that could be brought against a private individual in like circumstances – nothing more than what was granted in 1605A, and nothing less.

Unfortunately, this Court was not made aware of § 1606 and default judgment awards against Iran were issued to "non-heirs" in violation of state law; these compensatory judgments to "non-heirs" have, in turn, caused the U.S. Victims of State Sponsored Terrorism Fund

---

[8]    The only difference of substance in the relevant portions of the two statutes is the result of minor changes made in committee to conform the FSIA to international practice. *See* H.R. Rep. 94-1487, at 9 (1976).

("USVSST") to issue substantial dollar awards to "non-heirs" that have seriously diluted USVSST awards to widows and children. *See, e.g.*, Declaration of Lisa O'Brien dated March 28, 2023, which shows that many of the Plaintiffs herein are directly competing for wrongful death damages with the claims asserted by "non-heirs" under state law (parents and siblings of the decedent), MDL ECF #8961. Attorneys within the Department of Justice (which administers the USVSST), claim that the USVSST is "bound" to the honor the compensatory damage judgments issued in the 9/11 MDL litigation, so if "heirs" want to stop the USVSST awards to "non-heirs," "heirs" must prove that their state law argument is correct in the MDL litigation. Schutty Decl. at para. 49.

## II.    WHAT STEPS MUST A DISTRICT COURT TAKE TO ENTER AN FSIA DEFAULT JUDGMENT?

When a plaintiff seeks a default judgment against a foreign state under the FSIA, 28 U.S.C. §§ 1330, 1602–1611, the district court must undertake an independent and searching review before entering judgment. In the Second Circuit, courts have repeatedly emphasized that default judgments against foreign sovereigns are disfavored and may be entered only after the court is satisfied that jurisdiction, liability, timeliness, and damages are established by competent evidence. Unlike ordinary civil cases, default does not constitute an admission of liability by a foreign sovereign. Section 1608(e) imposes an affirmative obligation on the district court to evaluate the merits of the plaintiff's claims. "No judgment by default shall be entered by a court of the United States or of a State against a foreign state … unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). The Second Circuit has held that this provision "mirrors the standard for entry of default judgments against the United States" and requires courts to "exercise great caution." *See First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda–Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989). "Congress promulgated Sec. 1608(e) to provide foreign sovereigns with the same protections from default judgments that the

- 11 -

federal government enjoys under Fed. R. Civ. P. 55(e)."[9]  *Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994) (citation omitted).

Under Second Circuit precedent and the mandatory requirements of § 1608(e) (that a claimant establish a valid "claim or right to relief"), a district court must independently assess whether an FSIA claim is proper and timely before entering a default judgment and must deny a default judgment where the claimant lacks standing or where the claim is time-barred, regardless of whether the foreign state appears or asserts the statute of limitations as an affirmative defense. Section 1608(e) of the FSIA requires plaintiffs to establish each element of liability with competent evidence.  Allegations alone are insufficient.  The Second Circuit has explained that courts must "require plaintiffs to present admissible evidence supporting their claims" even where the foreign state fails to appear.  *See Com. Bank of Kuwait, supra,* 15 F.3d at 242.

Section 1605A(b) imposes a ten-year statute of limitations running from the date the cause of action arose or from April 24, 1996, whichever is later.  28 U.S.C. § 1605A(b).  Compliance with this limitation period is a prerequisite to jurisdiction. Courts must assess timeliness before entering a default judgment.  *Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 484–85 (D.C. Cir. 2016).  A failure to demonstrate timeliness independently bars relief (fn. 9).  This language conditions the existence of the cause of action itself.  Even where a statute of limitations is characterized as non-jurisdictional, courts must still enforce it when determining whether a plaintiff has stated a viable claim.  *See Jones v. Bock*, 549 U.S. 199, 212 (2007).  In FSIA cases, Congress imposed an additional safeguard: a default judgment may be entered only if the plaintiff

---

[9]        The Supreme Court has long held that statutes of limitations applicable to suits against the United States define the extent of the court's jurisdiction.  *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979). Failure to file within the prescribed period deprives the court of jurisdiction and requires dismissal.  *Soriano v. United States*, 352 U.S. 270, 276 (1957). The Second Circuit has consistently adhered to this principle. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).  The same principle must be applied to foreign states.

"establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e).
A time-barred claim cannot satisfy this requirement because it fails as a matter of law. *See
Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Fed'n*, 361 F.3d 676, 683 (2d
Cir. 2004).

Statutes of limitations are not waived by default, and courts may not enter judgment on
time-barred claims against a foreign state. Courts in this Circuit routinely assess accrual, tolling,
and statutory limitations periods *sua sponte* in FSIA default cases. *See, e.g., In re Terrorist Attacks
on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013); *but see Maalouf v. Islamic Republic of Iran*,
923 F.3d 1095 (D.C. Cir. 2019) (while Section 1608(e) requires "evidence satisfactory to the court"
before a default judgment can be entered, this requirement applies to the merits of the claim (*e.g.*,
proving the foreign state's liability and damages) and does not empower the court to assert forfeited
procedural defenses on behalf of the defaulting state). Plaintiffs here contend that the *Maalouf*
decision is not binding precedent, that the decision is wrong and illogical, and that this novel issue
should be addressed by the Second Circuit.[10] Query: how long will this Court keep its doors open
to 9/11 claims against foreign states in default? Forever?[11] Is this fair to the plaintiffs who have
asserted timely claims and are now obtaining diluted recoveries before the USVSST?

---

[10]    Plaintiffs herein wish to challenge the *Maalouf* decision in the Second Circuit as we can find no
other Circuit decision supporting the latter court's determination, which will allow a never-ending entry of
default judgments against foreign states. Critically, *Maalouf* addressed only whether a district court may
assert a limitations defense on behalf of a defaulting sovereign *sua sponte*. It did not hold that an untimely
§ 1605A claim satisfies § 1608(e); it did not address a court's independent duty to ensure that statutory
prerequisites to liability are met before entering judgment; it did not address what should be done with valid
objections by other plaintiffs being affected by untimely lawsuits (*see* fn. 11 below).

[11]    *See Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly
endless litigation takes on a new and more troubling dimension when paired with the murky public policy
consequences of enabling untimely judgments"), *rev'd on other grounds by, Maalouf v. Republic of Iran*,
923 F.3d 1095, 1114 (D.C. Cir. 2019) (holding: district court may not raise a statute of limitations defense
*sua sponte* against a defendant in default, but the Circuit Court acknowledged that it could not recognize
an argument by plaintiffs with timely claims, who alleged an adverse interest to that of untimely plaintiffs
-- since the recoveries of timely-filed plaintiffs were allegedly diluted in the USVSST Fund by the untimely

The Second Circuit has repeatedly held that courts may dismiss claims *sua sponte* on statute-of-limitations grounds where the defect is apparent from the pleadings.  In *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011), the Court explained: "A district court may dismiss an action sua sponte on limitations grounds in certain circumstances where the facts supporting the defense appear on the face of the complaint."  This authority applies with greater force in FSIA cases when a default judgment is sought on an untimely complaint, where § 1608(e) affirmatively conditions entry of the default judgment on the plaintiff's establishment of a "right to relief."  A time-barred claim cannot satisfy that statutory requirement.

In sum, district courts may not presume timeliness merely because the foreign state has not appeared.  To the contrary, § 1608(e) requires the court to determine affirmatively that the claim is timely, especially when untimely claims will dilute the recovery of those with timely claims. The foreign state's failure to assert the statute of limitations does not waive the defect and does not authorize the court to enter a default judgment.

## III.    THE FSIA WAS MISAPPLIED AGAINST IRAN IN THIS LITIGATION

### A.  This Court Has Wrongfully Ignored § 1606 and Applicable State Law & Ruled That § 1605A Provides a Stand-Alone Cause of Action

In the first action (*Havlish*) to establish liability against Iran under § 1605A in 2011, Magistrate Judge Maas determined that Iran could be held liable to plaintiffs because "they were either themselves nationals of the United States at the time of the September 11 attacks, or their claims are derived from injuries to victims who were U.S. nationals."  MDL ECF #2515 at 47, para. 11.  The legal right of individual *Havlish* plaintiffs to claim damages on behalf of a particular decedent was not addressed in this early decision.

---

claimants -- "because the Fund was not addressed by the District Courts. We therefore have no record on which to assess the accuracy or import of the parties' claims.").  Here we have such a record as the impact of never-ending litigation and its effect on USVSST awards has been made in this Court.  MDL ECF #8961.

After a following hearing on damages, Magistrate Judge Maas ruled that:

> **Section 1605A effected a 'sea change' in suits against state sponsors of terrorism. Previously, to recover damages against such defendants, plaintiffs had to demonstrate their entitlement under state or foreign law. Now, such claims are subject to a 'uniform federal standard.' Courts therefore usually determine damages under Section 1605A by applying the legal principles found in the Restatement of Torts and other leading treatises.**

Report & Recommendation dated July 30, 2012, MDL ECF #2618 at 5 (citations omitted and emphasis added).

Fatal legal errors are present in the above conclusions reached by the Court. First and foremost, the effect of § 1606 of the FSIA was not considered. Second, Supreme Court and Second Circuit precedent interpreting § 1606's effect on FSIA claims was not considered. Third, Supreme Court case law soundly rejects Magistrate Judge Maas's expressed need to create a "uniform federal standard" for an FSIA cause of action where existing state law was and is applicable. And, finally, courts are not allowed to use the "Restatement of Torts and other leading treatises" to create a federal common law in the stead of applicable state law. The Second Circuit has refused to follow Restatement provisions where they conflict with controlling state law. *See Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005) (noting that Restatement principles cannot override established state precedent).

The "sea change" brought by § 1605A, as claimed by Magistrate Judge Maas, was, in fact, nothing of the sort. Section 1606, FSIA's legislative history, and U.S. Supreme Court and Second Circuit precedent (cited above) all were *not* considered by him; nor was otherwise applicable state law. The legal right of individual *Havlish* plaintiffs to claim damages on behalf of a particular decedent was not addressed – all the plaintiffs were simply considered "victims" ("immediate family members") under a stand-alone FSIA federal cause of action claimed to be preemptive. The legal theory asserted against Iran by the PEC in the MDL litigation (starting with the *Havlish*

- 15 -

default judgment application against Iran) was that *the FSIA provides a stand-alone, preemptive cause of action*, *separate and apart from state law*, and implicitly that the federal cause of action allows the Court to ignore otherwise applicable state law and state policy. Section 1606 was not even cited once by the attorneys pressing for early default judgments against Iran. Schutty Decl., para. 68. The PEC has suggested to this Court that it can liberally interpret the FSIA and award damages to "victims" (otherwise described as "immediate family members"[12]) by the judiciary developing a federal common law remedy, instead of applying applicable state law (significantly, the phrase "immediate family member" is not found anywhere within the FSIA or applicable state wrongful death law).

Magistrate Judge Maas treated § 1605A as a stand-alone cause of action and he employed judicial discretion and federal common law creation to determine who should receive solatium wrongful death damages for the death of each decedent (alleged "immediate family members"):

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |

---

[12]    In this litigation and others, "immediate family members" have sued Iran for "loss of solatium," which is "the mental anguish, bereavement, and grief" experienced by those with an alleged close relationship to the victim. *See, e.g.*, *Est. of Hirshfeld v. Islamic Repub. of Iran*, 330 F. Supp. 3d 107, 140 (D.D.C. 2018). Some courts have held that under the FSIA, a solatium claim "is indistinguishable" from an intentional infliction of emotional distress (IIED) claim. *Id.* These courts have wrongfully applied the Restatement (Second) of Torts to these claims rather than applicable state law in violation of § 1606 and U.S. Supreme Court precedent. Foreign states have been held liable for IIED if they "by extreme and outrageous conduct intentionally or recklessly cause[ ] severe emotional distress to another." Restatement (Second) of Torts § 46(1). The Restatement permits recovery by (1) members of the victim's immediate family (2) *who were present at the time of the conduct*. *See id.* § 46(2) (emphasis added); *Est. of Hirshfeld*, 330 F. Supp. 3d at 141. Restatement principles must be rejected when they conflict with applicable law. *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005) (noting that Restatement principles cannot override established state precedent). New York courts apply a strict duplicative-claim doctrine. An IIED claim will be dismissed if it seeks damages recoverable under another theory or is based on the same conduct and injury as the wrongful death claim. *Stanley v. City of New York*, 2020 N.Y. Misc. LEXIS 20353 (Sup. Ct. N.Y. Cty. 2020); *Wolkstein v. Morgenstern*, 275 A.D.2d 635, 713 N.Y.S.2d 171 (1st Dep't 2000). New York courts closely scrutinize IIED claims arising from incidents involving death, emphasizing that even severe grief does not alone satisfy the extreme-and-outrageous conduct requirement. *Lauer v. City of New York*, 240 A.D.2d 543, 659 N.Y.S.2d 57 (1st Dep't 1997). State law was ignored in this respect.

| | |
|---|---|
| *Parent* | $8,500,000 |
| Child | $8,500,000 |
| *Sibling* | $4,250,000 |

MDL ECF #2623 at 4 (italicized individuals above are not entitled to wrongful death or IIED damages under NY, NJ and CT law when a decedent is survived by a widow and children).

The concept of recovery by "immediate family members" for solatium was apparently developed when courts compared § 1605A solatium damage claims to those pursued under an intentional infliction of emotional distress ("IIED") claim as described in the Restatement (Second) of Torts, but this comparison is irrelevant in terms who has standing to pursue damages arising out of a death under state law. *See* fn. 12. It is significant that the phrase "immediate family member" is not found or defined within the text of the FSIA itself (or applicable state wrongful death law). Instead, the ability to recover damages and the scope of who qualifies as an "immediate family member" were developed through *judicial interpretation* in FSIA cases, *i.e.*, through a creation of federal common law in violation of § 1606 using Restatement of Tort principles.[13] Ultimately, while the term is not in the FSIA's text, case law and related federal

---

[13]    This Court made a very similar error in applying the Anti-Terrorism Act (ATA), 18 U.S.C. § 2333, in determining The Taliban's liability for damages arising out of a death. The legislative history of the ATA reflects Congress's expectation that courts would look to generally applicable tort and wrongful death doctrines—often derived from state law—to determine proper beneficiaries for such claims. Rather than codifying a detailed federal wrongful death scheme within the ATA, Congress expected courts to rely on traditional tort doctrines. Thus, in applying the statute, courts should look to established tort (state) law principles to determine who qualifies for damages as a survivor or heir. Congress sought only "to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law." *Boim v. Quranic Literacy Inst. & Holy Land Found.* 291 F.3d 1000, 1010 (7th Cir. 2002); *see also* 137 CONG REC. S4511-04 (daily ed. Apr. 16, 1991) (statement of Sen. Grassley) (The ATA accords victims of terrorism "the remedies of American tort law, including treble damages and attorney's fees."). District courts have further held that because the ATA does not define the terms "survivors" or "heirs," courts should look to applicable wrongful death and survival law to determine who may recover. *See, e.g., Kaplan v. Central Bank of the Islamic Republic of Iran*, 961 F. Supp. 2d 185, 194–

programs[14] began to use the term, without proper statutory or precedential authority, to describe who may recover damages for death or solatium claims under the FSIA terrorist exception.

By creating new federal common law (*viz.*, independently determining who may recover and pursue FSIA damages for death/solatium) and extending the federal common law into an area where there is already "readymade" law, *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 740 (1979), the District Court here misread the FSIA and "bypass[ed] its design." *Federal Republic of Germany v. Philipp*, 592 U.S. 169, 187 (2021). Section 1606 should not have been ignored. While § 1606 does not expressly require the application of state wrongful-death statutes, its functional effect is to incorporate those statutes by requiring courts to treat foreign states like private parties. Legislative history, statutory structure, and decades of federal cases confirm that state law governs FSIA death/solatium claims except where Congress has explicitly supplied a federal cause of action that explicitly preempts state law, which Congress has not yet done. This Court improperly applied a stand-alone FSIA cause of action and determined without appellate precedent who this Court believes should recover FSIA damages arising out of a death.

**B.  Section 1605A Does Not Preempt State Law**

The "uniform federal standard" that Magistrate Judge Maas claimed now exists because of § 1605A (MDL ECF #2618 at 5) was/is clearly incorrect because § 1605A cannot be viewed as a

---

95 (D.D.C. 2013) (noting the ATA's reliance on traditional tort principles). Again, if state law was properly applied in giving effect to the ATA cause of action, parents and siblings would have no right to recover damages where a decedent is survived by a spouse and children.

[14]    The USVSST Fund, which operates wholly on compensatory damage judgments from FSIA lawsuits, rightly or wrongly, now uses guidelines informed by these court decisions to define "immediate family member" for the purpose of distributing compensation. This definition from the USVSST Fund specifically includes spouses, domestic partners, children, stepchildren, parents, stepparents, brothers, sisters, half-brothers, and half-sisters who have right to death/solatium damages under state law. The within Plaintiffs contend that this Court's misapplication of the FSIA (its disregard of § 1606, Supreme Court and Second Circuit precedent, and the need to apply state law) has resulted in the USVSST Fund now wrongfully awarding damages to individuals not authorized by traditional tort law to receive such awards.

preemption of state law. Without an express provision for preemption (and there is none in the FSIA or in § 1605A), courts will find that a federal statute preempts state law only where there is either an "actual conflict" between state law and the federal statute, or where Congress has demonstrated an intent to "occupy the field" to the exclusion of state regulation. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 371-72 (2000); *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991). Neither of those circumstances are present here. An "actual conflict" will arise only when "compliance with both federal and state regulations is a physical impossibility" or when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wisconsin Pub. Intervenor*, 501 U.S. at 605. Here, foreign nation liability under state law through § 1606 is not incompatible with the new (2008) expansive damages made available in claims against foreign states pursuant to § 1605A, which simply adds additional remedies. Moreover, Congress will be deemed to "occupy the field" only where a scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* at 604.

It is difficult to understand how § 1605A – a single, brief statute that applies only to foreign states, does not make any mention of § 1606, and contains no language remotely suggesting a preemption of state law – could be read to leave no opportunity for state law to be applied to wrongful death claims against foreign states. Had Congress wished a contrary result, it could easily have written it into the statute. However, § 1605A provides no evidence of a desire to occupy the field of claims against foreign states.

## C.    Section 1605A Does Not Require a Uniform Wrongful Death Remedy

This Court might claim that relying on the law of the state of the decedent's domicile will lead to different recoveries for each of the plaintiffs. This is true, but there is nothing unusual or

unfair about this result. "[I]t is not uncommon for courts to apply the substantive law of several different states" in resolving mass tort cases. *See, e.g., In re Air Crash Disaster*, 926 F. Supp. at 740; *see also In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. 1445, 1448 n.3 (D. Colo. 1988) (noting that approach of "search[ing] for the rule of law most appropriately applied within the context of a particular issue" is "widely applied" in mass tort litigation even though it "may lead to the application of the law of different jurisdictions to different issues within the same case"). Each state will choose rules of liability and damages that it thinks are best designed to protect the welfare of its citizens. There is no injustice in a plaintiff finding himself or herself subject to the laws of his or her state of domicile. And this precise task – the need to apply various state wrongful death statutes to determine the value of 9/11 wrongful death claims – was repeatedly employed previously by the U.S. Department of Justice in determining the value of individual family member wrongful death claims filed with the U.S. Victims Compensation Fund. *See* https://www.justice.gov/archive/victimcompensation/distribution_plan_award.html#law ("The wrongful death law of the state of the victim's domicile generally governs the distribution of the economic loss portion of the [wrongful death] award.").

Although this result might appear cumbersome, it is common for mass disaster tort cases outside of the FSIA to use the plaintiff's domicile as the rule of decision even though it follows that there will be varying results for the defendants. *See, e.g., Pescatore*, 97 F.3d at 11 (applying the law of the domicile state in one of the numerous consolidated cases filed against Pan Am under the Warsaw Convention relating to terrorist bombing of airplane); *In re Aircrash Disaster,* 948 F. Supp. at 749-52 (applying law of domicile as rule of decision in FSIA claims brought by more than thirty plaintiffs from many different states). Finally, as will be explained below, the fact that an examination of the law of the several states will be burdensome does not justify the

displacement of the law of the several states with a single federal rule. *See O'Melveny & Myers v. Fed. Deposit Ins. Co.*, 512 U.S. 79, 88 (1994) ("eliminating state-by-state research and reducing uncertainty" not grounds for displacing state law with a federal common law rule).

### D. Federal Common Law Is Not Needed in Section 1605A Cases

Federal common law should only be employed in the rarest of circumstances. *See O'Melveny*, 512 U.S. at 87, 89 (1994) (noting that the "cases in which judicial creation of a special federal rule would be justified" are "few and restricted" and "extraordinary" (quotation marks omitted)). A court should craft a federal common law rule only in cases where there are both "uniquely federal interests" and a "significant conflict between some federal policy or interest and the use of state law." *Boyle v. United Tech. Corp.,* 487 U.S. 500, 506 (1988); *Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 127 (2d Cir. 1999).

The principal rationale for the use of federal common law in § 1605A litigation is that it promotes "predictability and uniformity" in a sensitive area of jurisprudence. But an interest in uniformity standing alone is an insufficient basis for fashioning a federal common law remedy. Responding to a similar argument several years ago, the Supreme Court explained that: "Uniformity of law might facilitate the FDIC's nationwide litigation of these suits, eliminating state-by-state research and reducing uncertainty – but if the avoidance of those ordinary consequences qualified as an identifiable federal interest, we would be awash in 'federal common-law' rules." *O'Melveny*, 512 U.S. at 88. Consequently, courts have consistently rejected the contention that an interest in uniformity can support the fashioning of a federal common law rule in the absence of a "significant conflict" between state and federal law. *See id*. (interest in uniformity is the "most generic (and lightly invoked) of alleged federal interests"); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 730 (1979) ("generalized pleas for uniformity" not a basis

for resort to federal common law); *B.F. Goodrich v. Betkoski*, 112 F.3d 88, 90 (2d Cir. 1997) ("In conducting this analysis, we bear in mind that absent a significant conflict between some federal policy or interest and the use of state law, a mere federal interest in uniformity is insufficient to justify displacing state law in favor of a federal common law rule."). As the D.C. Circuit has explained, § 1606 is an instruction to "find the law, not to make it." *Bettis*, 315 F.3d at 338. Where Congress provides this sort of direction, any federal common law that might once have existed is displaced. *See also City of Milwaukee v. Illinois*, 451 U.S. 304, 312 (1981) (courts may not "develop federal common law" when Congress has "spoken to a particular issue").

The possibility that a cause of action might be based in the federal common law in the absence of § 1606 must give way to the instruction provided by Congress in § 1606. Accordingly, this is not one of the "few and restricted" cases where it is appropriate to fashion federal common law as the rule of decision. The desire for uniformity alone is not a sufficient reason to create federal common law, no other unique federal interest is implicated, and there is no significant conflict between some important federal policy or interest and the application of state law.

### E. The District Improperly Granted Default Judgments to Plaintiffs Who Have Asserted Untimely Claims

Untimely actions should be dismissed, and default judgments should certainly not be granted to plaintiffs asserting untimely claims against Iran. Yet here, thousands of plaintiffs asserting untimely claims have been added belatedly to this litigation against Iran. For example, many untimely "Latent Injury" cases have been added to this litigation. *See* Schutty Decl., para. 80. Despite being untimely, these plaintiffs were granted default judgments improperly by this Court in violation of the FSIA statute of limitations and Second Circuit precedent. Examples: MDL ECF ##8901 and 8920. This Court has held that it has the discretion to not enforce the statute of limitations because the latter is an affirmative defense that Iran, a party in default, had

failed to plead. MDL ECF #8901. This is not a proper or logical reading of the law. Enforcing §

1605A(b) under § 1608(e) does not assert a "defense" for the sovereign; it enforces a statutory

prerequisite (jurisdiction) to relief (see fn. 9). Here, untimely plaintiffs cannot establish a valid

"claim or right to relief" as required by 28 U.S.C. § 1608(e). In fact, in the context of this MDL

litigation, where thousands of untimely actions have been filed and tens of thousands of untimely

claims may be filed in the years ahead[15] this Court must set an end to such a chaotic docket and

protect those who have filed timely claims.[16] In this regard, this Court abused its discretion in

allowing these suits and their default judgments.

The Second Circuit has repeatedly held that courts may dismiss claims *sua sponte* on

statute-of-limitations grounds where the defect is apparent from the pleadings. In *Walters v. Indus.*

*& Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011), the court explained: "A district

court may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the

facts supporting the defense appear on the face of the complaint." This authority applies with

---

[15]    We offer the comments of another district court judge addressing the issue:

> For how long should such claims be allowed? From the standpoint of the judicial branch, only two principled time limits present themselves: either the ten-year statute of limitations Congress has imposed, or no time limit at all. After all, if a sixteen-year (or a twenty-nine-year) gap is acceptable, there is little reason to prohibit suits brought forty, fifty, or more years after the fact. The claimants could easily glean evidence of a defendant's culpability by dusting off old volumes of the Federal Supplement. As long as each crop of plaintiffs could show that they were victims or proper third-party claimants, they could continue racking up sizable damages awards for decades in response to a single act.

*Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46,55 (D.D.C. 2018), *rev'd on other grounds by*, *Maalouf v. Republic of Iran*, 923 F.3d 1095 (D. Cir. 2019)

[16]    Today's overloaded dockets demand procedures that reduce burdensome litigation levels. By keeping stale claims out of court, statutes of limitations relieve courts "of the burden of trying stale claims when a plaintiff has slept on his rights." *Burnett v. New York Cent. R.R.*, 380 U.S. 424, 428 (1965) (footnote omitted); *see United States v. Western Pac. R.R.*, 352 U.S. 59, 72 (1956) ("purpose of [statutes of limitations] is to keep stale litigation out of the courts"). Chief Justice Marshall warned that having no limitation on rights of action would be "utterly repugnant to the genius of our laws." *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 342 (1804) (dicta).

greater force in FSIA cases where plaintiffs with timely claims have objected and where § 1608(e) affirmatively conditions entry of default judgment on the plaintiff's establishment of a "right to relief." A time-barred claim cannot satisfy that statutory requirement. District courts may not presume timeliness merely because the foreign state has not appeared. To the contrary, § 1608(e) requires the court to determine affirmatively that the claim is timely. Second Circuit precedent, read together with the mandatory language of 28 U.S.C. § 1608(e), requires a district court to deny a plaintiff's application for a default judgment against a foreign state where the claims are barred by the statute of limitations, even if the foreign state does not appear or assert that defense. *See Com. Bank of Kuwait, supra,* 15 F.3d at 242.

In sum, before entering a default judgment against a foreign state § 1608(e), a district court in the Second Circuit must independently determine that jurisdiction exists, service was proper, claims are timely, liability is established by satisfactory evidence, and damages are legally authorized and supported. A failure to conduct this analysis constitutes reversible error.

## IV.    A WAIVER OF PUNITIVE DAMAGE AWARDS NOW ENTITLES THE WITHIN PLAINTIFFS TO FINAL JUDGMENTS AGAINST IRAN

The Plaintiffs herein have already had each of their Estates receive a punitive damage award against Iran of $6.88 million each. MDL ECF #3226. Should the Court not honor those prior awards and insist on new briefing and hearings on punitive damages, the Plaintiffs herein will agree to waive their punitive damage claims in exchange for this Court's promise to order the entry of Final Judgments against Iran (with prejudgment interest) with Fed. R. Civ. P. 54(b) certification. More than a year has now passed since the punitive damages issue was "pushed off" (MDL ECF #10470: "The Court declines to set a briefing schedule on this issue at this time."), and it appears neither the PEC, nor the Court, are willing to bring these claims against Iran to any immediate end. The Plaintiffs herein are now entitled to an ultimate disposition against Iran since

there are no longer any unresolved issues as to Iran's liability to these Plaintiffs and there is no longer any just reason for delay.

## V.    PLAINTIFFS REQUEST THAT THIS COURT CERTIFY ITS ORDER & JUDGMENT AS FINAL AGAINST IRAN UNDER FED. R. CIV. P.  54(b)

Rule 54(b) of the Federal Rules of Civil Procedure authorizes entry of a Final Judgment as to fewer than all claims or parties when the district court "expressly determines that there is no just reason for delay."  The Order now requested should be certified as a Final Judgment because it will fully dispose of the rights and liabilities of at least one party (Iran) and an immediate appeal will serve the interests of sound judicial administration and fairness to the litigants.  The Order requested will end the litigation on the merits for Iran as against the within Plaintiffs, leaving nothing for this Court to do but execute the judgment.  Here, delaying the appeal sought by the within Plaintiffs will cause these Plaintiffs unnecessary hardship, injustice, and prejudice.  The Second Circuit, Supreme Court, and Federal Rules require that a judgment be documented and entered swiftly following a dispositive order.  This Court now has two options requested by the moving Plaintiffs: (1) it can reconsider and reverse its prior wrongful rulings as to Iran (Orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b)), or (2) it can immediately issue an Order that (a) provides for the entry of the Final Judgments to these Plaintiffs with prejudgment interest and (b) certifies the Order for appeal pursuant to FRCP Rule 54(b).

**CONCLUSION**

For the foregoing reasons, the Plaintiffs respectfully request that this Court grant this renewed motion in all respects.

Dated:  January 29, 2026
       New York, New York

                                     LAW OFFICE OF JOHN F. SCHUTTY, P.C.

                                By: /s/ *John F. Schutty*

                                    John F. Schutty (JS2173)
                                    445 Park Avenue, 9th Floor
                                    New York, New York 10022
                                    Tel: (646) 345-1441